IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| JERRI L. GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06-5094-CV-SW-ODS |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION AFFIRMING FINAL DECISION
OF COMMISSIONER OF SOCIAL SECURITY**

Pending is Plaintiff's request for review of the final decision of the Commissioner
of Social Security denying his applications for disability insurance benefits and
supplemental security income benefits.  For the following reasons, the Commissioner's
decision is affirmed.


I.  BACKGROUND


Plaintiff was born August 19, 1965 and resides in Joplin, Missouri. She alleges an
onset of disability beginning January 18, 2003, as a result of degenerative disc disease,
auto-immune disorder, bulging disc, partial numbness on her left side from the shoulder
down, displaced knee cap, borderline diabetes, thyroid problems and a pituitary gland
that does not function properly. R. at 160. She is currently in school working towards a
degree in criminal justice.  Plaintiff is 5' 4" and weighs 237 pounds. R. at 19.  Plaintiff
previously worked as a wire solderer, scale assembler, stocker and order filler. R. at 38-
40.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social
Security and therefore should be substituted as the Defendant in this action.  Fed. R.
Civ. P. 25(d)(1).

Dr. David Jones

Dr. David Jones treated Plaintiff from July 26, 1999, through January 20, 2004. In 1999, Plaintiff was diagnosed with dermatographism with probable elevated histamine response and possible hypothyroidism. R. at 208. In 2000, Plaintiff was diagnosed with an intradermal cyst in her right upper arm and determined to be obese. R. at 205. In February 2002, Plaintiff presented to Dr. Jones complaining of fatigue and hair loss. Evaluation for thyroid disease returned as normal. Dr. Avalr, a specialist, determined she had fibromyalgia syndrome, a condition characterized by long-term, body-wide pain and tender points in joints, muscles and other soft tissues, however Plaintiff was "adamant that is not the case" and refused to see that doctor again. R. at 196.  In October 2002, Dr. Jones diagnosed Plaintiff with vertigo, hypothyroidism, hyperlipidemia (an elevation of fats in the bloodstream) and insulin resistance. R. at 193.  On January 20, 2003, after complaints of numbness in her left arm and leg and, Plaintiff underwent an MRI. R. at 190.

St. John's Regional Medical Center

Plaintiff received treatment from St. John's Regional Medical Center from March 27, 2001 through November 1, 2004. R. at 249. A CT scan was performed on March 27, 2001, and no acute intra cranial process was identified. R. at 187.  On April 10, 2003, an x-ray indicated a reversal of the normal cervical lordotic curve and mild arthritic changes of the cervical spine. R. at 301.  A cervical MRI showed no evidence of central canal stenosis or neural foraminal stenosis. R. at 300. On April 18, 2003, a CT scan indicated distention of the right ureter, distal right ureteral calculus at the ureterovesicular junction. R. at 298-99.

Dr. Karen Porte

Between December 2002 and October 2003, Plaintiff was treated by Dr. Karen Porte. R. at 241. Dr. Porte treated Plaintiff for fibromyalgia, reactive hypoglycemia, chronic pain syndrome, subclinical hypothyroidism, pituitary insufficiency, and

degenerative disc disease. R. at 241-245. Dr. Porte noted Plaintiff had previous head trauma, pituitary dysfunction and hyperlipidemia. R. at 241. Dr. Porte recommended Plaintiff remain on her current medication, which included Esclim, Synthroid, Cyotmel, and Glucophage and prescribed Zoloft, Nasacort, Vioxx, Wellbutrin and Adderall. R. at 246.

Freeman Health System

Plaintiff received physical therapy at Freeman Health System in January 2003. R. at 180. She rated her pain on January 9, 2003, as a 10 out of 10, but stated three weeks prior to the visit, her pain was a 5 out of 10. R. at 180. Plaintiff received treatment for "swimmer's ear", and an abnormality of her big toe on her left foot, which required surgery. R. at 384 and 405. In 2006, Plaintiff underwent surgery for stress urinary incontinence, hypermobile urethra and an injury to perineal body. R. at 369.

Dr. Hish Majzoub

Hish Majzoub, a neurologist, met with Plaintiff in March and April 2003. Dr. Majzoub noted that an MRI of Plaintiff's lumbar spine revealed a small disc herniation at L4 on the right, but Plaintiff had no pain in her right buttock or right leg and thus the disc was asymptomatic. He further stated her arm and leg pain appeared to be "bizarre, in that they were involving the whole arm and whole leg, which would make it very atypical for a neurological disease." R. at 237. Dr. Majzoub recommended an MRI and Xray of Plaintiff's cervical spine. R. at 238-39.

Disability Determination and Referral Service

At the Disability Determination and Referral Service on January 4, 2004, Plaintiff was examined by Dr. S. Subramanian, who noted that Plaintiff was conscious, alert, oriented and in no acute distress. R. at 310. Her chief complaint was chronic back pain starting in 2001. R. at 309. Plaintiff's medications at the time of the examination included Zantac, Allegra, Wellbutrin, Aldactone, Tricor, Cytomel, Synthroid and

3

Nasacort AQ. Dr. Subramanian found motor sensory functions were preserved and there were no definite problems noted in the brain or nervous system. R. at 310. He determined she had back pain, possibly secondary to lumbosacral disc disease, hypothyroidism, obesity, reflux disease, depression and chronic seasonal allergies. He noted that the cranial nerves were intact, Plaintiff's gait was normal and Plaintiff was not using any assistive device for walking. R. at 311. Plaintiff's range of motion of all joints was fairly well preserved and there was no definite arthritis of the small joints of the hands. R. at 311. He further stated Plaintiff did not seem to have any disability sitting, standing, handling objects, hearing, speaking, or traveling. However, because of her back pain, she might have disability lifting, carrying objects and walking long distances. R. at 311.

Dr. David Black

Dr. David Black treated Plaintiff from September 22, 2004 through October 27, 2004. He diagnosed degenerative joint disease of the first MTP joint, L5 pain which seemed to radiate from the spine to a joint in her left knee, left foot pain, and possibility of tarsal tunnel syndrome, a type of nerve disease due to the compression of the nerve in the ankle and foot. R. at 335.

Dr. David Dowell

Dr. David Dowell evaluated Plaintiff's physical limitations in a Medical Source Statement-Physical on April 4, 2005. R. at 328. He assessed the following limitations: she could lift and/or carry frequently ten pounds, twenty pounds occasionally; stand and/or walk continuously for 30 minutes, throughout an eight hour day for eight hours; sit continuously for five hours and through an eight hour day for eight hours; limited push/pull; occasionally climb, balance, stoop, kneel, crouch, crawl, reach and handle; avoid concentrated exposure to extreme cold and heat, weather, wetness and humidity; and needs to lie down or recline every four hours for 30 minutes. R. at 339.

Dr. Kenneth Burstin

4

Kenneth Burstin, Ph. D.,  evaluated Plaintiff's medical records between January 2003 and January 2005. R. at 314. He determined Plaintiff's medically determinable impairment consisted of depression NOS and affective disorders, but had no limitation in daily activities or maintaining social functioning, concentration, pace and persistence. R. at 317.  Dr. Burstin stated Plaintiff complained of AD/HD and dyslexia, but the record did not support either of her claims, and no observations of mental status abnormalities were noted. R. at 326.  He determined there was no evidence of severe, much less disabling limitations. R. at 326.

Southwest Physical Medicine and Rehabilitation

In May 2005, at Southwest Physical Medicine and Rehabilitation, Plaintiff complained of neck and lower back pain. R. at 362. Dr. Boyd Crockett's concluded Plaintiff's automatic contraction of the lumbar paravertabral muscles in response to the contraction of neck muscles was not functioning properly,  with possibility of a left L5 Radiculopathy. R. at 363.

Administrative Hearing

A hearing was held in front of Administrative Law Judge David Fromme on April 26, 2006. R. at 35.  Plaintiff testified she takes two hours of school a day and does "quite a bit" of homework every night, sometimes up to two to three hours on the computer. R. at 41 and 58.  Plaintiff stated her back pain can reach eight to ten, on a ten point scale, when she is sitting in class and takes pain medication twice a day regardless of her pain level. R. at 42.  She stated her medication can cause grogginess, mood swings, irritability and slower reflexes. R. at 42 and 48.  She testified that after sitting for over 20 minutes, her left hand would go numb. R. at 44.  Plaintiff testified she has two incontinent accidents a day, which are generally caused by coughing or stress. R. at 53. She stated she has a cyst on her knee that causes her to fall when it gives out. She makes dinner for her son, limiting it to something quick such as pasta or sandwiches. R. at 55. After finishing dinner, chores and homework, Plaintiff usually runs errands, helps her son with his homework and tries to keep her feet up. R. at 56.

5

Plaintiff asserted she did not agree with the Medical Source Statement completed by Dr. Dowell because she felt he based it upon her feet problems and did not thoroughly examine her back. R. at 62.

Vocational Expert Terry Crawford testified a person with Plaintiff's age, education and work history, with limitations as described by Plaintiff in her testimony, could not sustain any of her past relevant work. However, the same person with no limitation as far as gripping, handling, reaching and fingering could work in sedentary work as an assembler or an order clerk. R. at 64-66.

The ALJ determined Plaintiff had not engaged in any substantial gainful activity since the onset of disability, has severe impairments of obesity, degenerative disc disease and left toe hallux limitus and bunion post surgery, but does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments. R. at 20.  He found she could lift and/or carry frequently ten pounds, twenty pounds occasionally, pushing and pulling within those limitations; stand and/or walk continuously for 30 minutes, throughout an eight hour day for three hours; sit continuously for five hours and through an eight hour day for eight hours; occasionally climb, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold and heat, weather, wetness and humidity; and needs to lie down or recline every four hours for 30 minutes. R. at 20. The ALJ determined she was not able to return to any of her past relevant work, but there are jobs that exist in significant numbers in the national economy Plaintiff can perform. Plaintiff underwent surgery to correct her stress urinary incontinence and is on medication for the treatment of depression. Finally, he found Plaintiff had not been under "disability" as defined by the Social Security Act at any time through the date of his decision. R. at 23.

## II.  DISCUSSION

A. Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial

Case 3:06-cv-05094-ODS   Document 12   Filed 05/16/07   Page 6 of 10

evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff contends the ALJ erred by determining Plaintiff's injuries were non-severe impairments, improperly calculating Plaintiff's RFC and performing an improper credibility analysis.

B. Credibility and Plaintiff's Testimony

Plaintiff argues the ALJ improperly ignored her testimony and subjective complaints and did not perform the proper credibility analysis. The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full

consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1.  The claimant's daily activities;
2. the duration, frequency and intensity of the pain
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations.  Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

Plaintiff's testimony is contradicted by evidence in the record.  The ALJ noted Plaintiff's daily activities included managing her household as the mother of a child[2], shopping, cleaning, laundry, and cooking.  R. at 21.   Plaintiff claims her ADHD impairs her ability to study, but Plaintiff was never diagnosed as suffering from ADHD, and has successful a college attendance record. R. at 21 and 326. Further, the ALJ noted Plaintiff has not been directed to use a back brace or an assistive device for ambulation, and has never been referred by a physician to a pain management clinic. R. at 21.  Lack of strong pain medication is inconsistent with subjective complaints of disabling pain. See Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994). The ALJ further determined that her alleged knee problems were not so severe to significantly limit Plaintiff's ability to work and noted she underwent surgery to correct her urinary incontinence. R. at 20. There is substantial evidence to support the ALJ's decision regarding Plaintiff's credibility and the extent of the pain she experiences.

---

[2] In the record, the ALJ refers to Plaintiff as a mother of two, which Plaintiff points to as error sufficient to require reversal. The Court is not convinced this is more than an insignificant error.

8

C. Residual Functional Capacity

 Plaintiff contends that the ALJ failed to properly determine Plaintiff's residual functional capacity ("RFC"). The ALJ must formulate Plaintiff's RFC based on all the relevant, credible evidence of the record. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). As stated above, the ALJ properly discounted some of Plaintiff's subjective claims of pain and limitations.

 Plaintiff alleges the ALJ failed to properly consider Plaintiff's obesity. The question the ALJ posed to the medical expert specifically asked him to consider an individual with limitations such as Plaintiff's (as described in her own testimony) only disregarding gripping, handling, reaching and fingering. R. at 66. He further included analysis stating "Plaintiff is 64-66 inches tall and weighed 237 pounds at the time she alleged her disability began. She has subsequently [weighed] as much as 248 pounds, but has last weight to 207 pounds on January 9, 2006. This impairment poses additional limitations to those imposed by spinal and pedal impairments." R. at 19. Based on the record, it is clear that the ALJ properly considered Plaintiff's obesity.

 Plaintiff further asserts the ALJ failed to consider her degenerative disc disease of the lumbar spine. Dr. Majzoub noted that an MRI of Plaintiff's lumbar spine revealed a small disc herniation at L4 on the right, but Plaintiff had no pain in her right buttock or right leg and thus the disc was asymptomatic. He further stated her arm and leg pain appeared to be "bizarre, in that they were involving the whole arm and whole leg, which would make it very atypical for a neurological disease." R. at 237. Further, Plaintiff's gait was normal and she did not need any assistive device for walking. R. at 21 and 311. The record supports the ALJ's conclusion these conditions were not severe and confirms his assessment of Plaintiff's RFC.

9

## III.  CONCLUSION

For these reasons, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: May 16, 2007                    UNITED STATES DISTRICT COURT

10